**SPECIALIZED CARRIERS AND RIGGING ASSOCIATION,**
Plaintiff,

v.

**Harold C. KING, Commissioner, Virginia Department of Highways and Transportation, R.L. Suthard, Superintendent, Virginia Department of State Police, Defendants.**

Civ. A. No. 85–0711–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 1, 1985.

Joseph L. Steinfeld, Jr., Robert B. Walker, Washington, D.C., for plaintiff.

John M. McCarthy, Walter H. Ohar, Nancyellen Keane, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

CACHERIS, District Judge.

Plaintiff challenges the constitutionality of § 46.1–267 of the Code of Virginia which requires amber flashing lights, visible for at least 500 feet to be placed on top of any vehicle engaged in either escorting, or towing overdimensional materials, equipment, boats, or manufactured housing units. Va. Code Ann. § 46.1–267 (Cumm.Supp.1985). The statute also requires that a flashing light be mounted on the upper rear end of the overdimensional vehicle or load. The effective date of the statute was July 1,

1985. On June 26, 1985, the court granted plaintiff's Motion for a Temporary Injunction and then held a full hearing on the merits on July 23, 1985. For reasons set forth below, judgment is entered in favor of the defendants.

## I

### Findings of Fact

Plaintiff, Specialized Carriers & Rigging Association ("SC & RA"), is a not-for-profit association incorporated in the District of Columbia and authorized to do business in the Commonwealth of Virginia. SC & RA is composed of approximately 530 member companies, which are engaged in the transportation and rigging of heavy and oversized machinery, equipment, building materials and supplies.

Defendant, Harold C. King, is Commissioner of the Virginia Department of Highways and Transportation. He is responsible for issuing permits governing the use of highways and adjacent areas and thus for enforcing § 46.1–267 of the Code of Virginia.

Defendant, R.L. Suthard, is Superintendent of the Virginia Department of State Police, and as such is chief law enforcement officer in the Commonwealth of Virginia. State police officers under the Superintendent are charged with the enforcement of § 46.1–267 of the Code of Virginia.

Chapter 248 of the 1985 Virginia Acts of Assembly amended § 46.1–267 of the Code of Virginia to require the use of high intensity amber flashing lights visible for at least 500 feet on overdimensional loads. Pertinent portions of the statute are set forth as follows:

§ 46.1–267. Other permissible and required lights; police and fire-fighting vehicles, emergency vehicles, etc.; exceptions; penalty.—Any motor vehicle may be equipped with no more than two fog lamps. one passing lamp, one driving lamp, two side lamps of not more than six candlepower; interior light of not more than fifteen candlepower; vacant or destination signs and one steady-burn-ing, white lamp for the nighttime illumination of exterior advertising, emitting a diffused light of such an intensity as not to project a glaring or dazzling light on vehicles operated as public carriers; and signal lamps.... High intensity amber flashing lights, visible for at least 500', as prescribed by the Superintendent, shall also be required for use on any vehicle which is engaged in either escorting, or towing overdimensional materials, equipment, boats or manufactured housing units by authority of a highway hauling permit issued pursuant to § 46.1–343 of the Code of Virginia. Such lights shall be mounted on the top of the escort and tow vehicles and on the upper rear end of the overdimensional vehicle or load for maximum visibility, front and rear.

Va.Code Ann. § 46.1–267 (Cumm.Supp. 1985).

On January 22, 1985, Chapter 248 was introduced in the Virginia General Assembly as House Bill 1643. It was unanimously reported by the House Committee on Roads and Internal Navigation and unanimously passed the House of Delegates. Subsequently, it was referred to the Senate Committee on Transportation for action. It was reported, by the Committee and passed the Senate, both unanimously. Governor Robb approved House Bill 1643 on March 14, 1985. (Defendants' Exhibit No. 12).

House Bill No. 1643 was discussed by the Virginia General Assembly in open committee meetings. Representatives of the trucking industry and other interested groups were present at these meetings and voiced no opposition to the bill. (Testimony of J. Lynwood Butner).

Prior to the passage of House Bill No. 1643, § 46.1–267 of the Code of Virginia required the use of high intensity amber lights on any vehicle engaged in the towing of a manufactured housing unit and also on the upper rear end of such unit being towed. Amber flashing lights were not required on escort vehicles prior to passage of House Bill 1643, and amber lights were

not required on manufactured housing units until passage of Chapter 311 of the 1978 Virginia General Assembly. (Chapter 311, 1978 Acts).

House Joint Resolution 41 of the Virginia General Assembly authorized the study of the movement of 14 foot wide manufactured housing units in Virginia in 1976. The study found that there were no major differences between the traffic and safety characteristics of 12-foot units and those units of 14-feet. The study noted that of 41 states questioned, 35 states required amber flashing lights on the unit or escort vehicle or both. The study also reviewed the manueverability problems of the 12 and 14-foot manufactured housing units. (Defendants' Exhibit No. 9—1976 Evaluation of the Movement of Manufactured Housing Units).

Since 1976, state officials have recommended that the General Assembly require the use of amber flashing lights on all overdimensional vehicles or loads, as part of the administrative and statutory regulation of these oversize vehicles. The use of amber flashing lights was discussed at seminars held by the Virginia Department of Highways and Transportation for the trucking industry in 1979. The members of the Military-Civilian Transportation Safety Workshop have annually recommended, since 1981, the statutory enactment of the amber flashing light requirement for all overdimensional vehicles based on public safety concerns. (Testimony of Parker, Hanna-Defendants Exhibits-Workshop Minutes, 1979 Hauling Conference).

In April 1985, the Permit Section of the Virginia Department of Highways and Transportation sent out a notice and an administrative interpretation of Chapter 248 to various persons who received overdimensional permits from the Department. Also, advertisements were placed in newspapers throughout the Commonwealth of Virginia giving notice of the enactment of the new law.

During the 1985 session of the General Assembly, the Virginia Legislature declined to pass legislation increasing vehicle width from 96″ to 102″ and overall vehicle length from 55′ to 65′. The study prepared by the Virginia Department of Highways concluded that vehicles exceeding 56 feet in length and 102 feet in width were not compatible with pavement widths less than 24 feet. The Virginia highways, excluding the interstate system and selected stretches of federal-aid primary highways designated in accordance with the federal Surface Transportation Assistance Act of 1982, would be burdened by the use of such larger vehicles and highway safety would diminish. (Defendants' Exhibit No. 15—Impact Analysis of Truck Length and Width Increases on Virginia Roads).

An overdimensional load, truck, tractor, or semi-trailer is one that exceeds certain prescribed height, length and weight restrictions. According to the Virginia Code, any truck, tractor or semi-trailer which exceeds 102″ in width on a federal highway, 96″ in width on a state highway, 13′6″ in height, and 40′ in length or for a combination of vehicles 60′ in length will be considered overdimensional. Va.Code Ann. § 46.1–328, 329, 330 (Cumm.Supp.1985). Overdimensional vehicles and loads create safety problems and are a burden on Virginia highways. In addition, the safety considerations that make amber flashing lights necessary on 14 foot manufactured housing units are equally applicable to other overdimensional vehicles or loads.

49 U.S.C.A. § 2316 (Supp.1985) requires that the widest commercial vehicle sanctioned by federal law for operation on interstate highways and designated federal-aid primary highways in Virginia is 102 inches. All loads of a width in excess of this travel the highways of the nation under the particular permit systems of the various individual states. 49 U.S.C.A. § 2316(c) (Supp.1985) allows each state to issue permits for overdimensional vehicles and loads.

There is no uniformity of state regulations governing permit standards for overdimensional loads. (Testimony of Parker, Jacobs). Approximately ten percent of motorists are illiterate and, therefore, cannot

read a sign, such as, "overdimensional load", etc.

Virginia interprets its statute to require that the flashing amber lights be affixed to the upper portion of the rear of the overdimensional vehicle or load rather than the top of the vehicle or load. Therefore, there is some flexibility in interpretation.

The Department of Transportation's Federal Motor Carrier Safety Regulations require that most exterior lights be steady burning. 49 C.F.R. § 393.25(f).

An amber flashing light would not decrease highway safety by either causing motorists confusion or inappropriate vehicle operator response. Furthermore, amber flashing lights on overdimensional loads are appropriate warning devices during the daylight hours.

Accidents have occurred in Virginia with vehicles operating overdimensional loads.

It is routine for overdimensional vehicles to stop at the next state's border in order to meet the different permit requirements.

It would cost two hundred twenty dollars ($220.00) to outfit a truck cab and oversized load with equipment mandated by § 46.1–267. (Stipultion of the parties).

## II

### Preemption

■ The first inquiry is whether § 46.1–267 of the Va.Code has been preempted by 49 C.F.R. § 393.25(f) (1984). SC & RA argues that § 393.25(f) preempts § 46.1–267 of the Va.Code. Defendants argue that the Federal Highway Administration has promulgated regulations in the area of lighting devices but has not preempted the entire subject matter.

The theory of preemption is that so long as Congress acts within an area delegated to it, as under the Supremacy Clause, state laws which are contrary are preempted.

The principal to be derived from our decision is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.

*Florida Lime and Avocado Growers v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

In the recent case of *Tousley v. North American Van Lines,* 752 F.2d 96 (4th Cir.1985), it was held that "... in the absence of express preemption by Congress, the examination of any preemption issue involves a two-tier inquiry: (1) whether Congress in passing the statute intended to occupy the field, or (2) whether the state statute is void because it conflicts with federal regulation. *See Silkwood v. Kerr-McGee Corp.,* [464 U.S. 238] 104 S.Ct. [615] at 621 [78 L.Ed.2d 443] (1984)."

In *H.P. Welch Co. v. New Hampshire,* 306 U.S. 79, 59 S.Ct. 438, 83 L.Ed. 500 (1939), the Supreme Court held that the predecessors of the Federal Motor Carrier Safety Regulation did not preempt state regulation in the same field.

49 C.F.R. § 393.2 (1984) states "Nothing contained in Parts 390 through 397 of this subchapter shall be construed to prohibit the use of additional equipment and accessories ..." Also, 49 C.F.R. § 390.30 (1984) provides in the regulation that "[p]arts 390–397 of this subchapter are not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the subject thereto." It appears that states may also pass their own regulations.

It should also be pointed out that the widest width required under any federal law is a vehicular dimensional width of 102 inches as authorized by the Surface Transportation Assistance Act. 49 U.S.C.A. § 2316 (Supp.1985). In this case we are dealing with overdimensional loads which are 12 to 14 feet wide. Each individual state sets safety requirements through permits for overdimensional loads. 49 U.S.C.A. § 2316(c) (Supp.1985). The standard lane of travel is 12 feet and they were not

designed to carry a 14 foot load. Therefore, a state may impose additional equipment requirements.

The court concludes that 49 C.F.R. § 393.25(f) (1984) does not preempt Va. Code Ann. § 46.1–267 (Cumm.Supp.1985).

## III

### *Commerce Clause*

■ A state may regulate the use of its highways in the interest of public safety. *See Smith v. State of Alabama,* 124 U.S. 465, 8 S.Ct. 564, 31 L.Ed. 508 (1888).

■ State regulations affecting interstate commerce will be upheld by a court if the regulation is rationally related to a legitimate state end, and secondly, if the regulatory burden and discrimination imposed on interstate commerce is outweighed by the state interest in enforcing the regulation. *Southern Pac. Co. v. State of Arizona, ex rel Sullivan,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Cities Service Gas Co. v. Peerless Oil & Gas Co.,* 340 U.S. 179, 186–87, 71 S.Ct. 215, 219–220, 95 L.Ed. 190 (1950).

■ There is a strong presumption of validity that surrounds a state safety regulation and the burden of overcoming a strong presumption rests on the plaintiff. *Raymond Motor Transportation, Inc. v. Rice,* 434 U.S. 429, 444, 98 S.Ct. 787, 795, 54 L.Ed.2d 664 (1978).

■ The federal statutes and regulations do not address vehicular width dimensions greater than 102″. In the case at bar, we are dealing with overdimensional loads that have 12 to 14 foot widths. Therefore, Virginia may impose reasonable requirements which are outside federal regulations.

The court has to balance the constitutionality of the safety regulation against the burden on interstate commerce. There is no evidence that Va.Code Ann. § 46.1–267 (Cumm.Supp.1985) is discriminatory in effect or intent on interstate commerce. Furthermore, at the time the court entered the Preliminary Injunction, the court reversed judgment on the issue of highway safety. The court is now satisfied that this is a safety regulation. *See South Carolina Highway Dept. v. Barnwell Bros.,* 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938). The safety interests of the state far outweigh the slight burden on interstate commerce, and therefore, this court finds Va.Code Ann. § 46.1–267 (Cumm. Supp.1985) does not violate the Commerce Clause.

## IV

### *Conclusions of Law*

The court has jurisdiction over this cause of action.

49 C.F.R. § 393.25(f) (1984) does not preempt Va.Code Ann. § 46.1–267 (Cumm. Supp.1985).

Va.Code Ann. § 46.1–267 (Cumm.Supp. 1985) does not unduly burden interstate commerce.

The plaintiff's Preliminary Injunction issued by this court on June 26, 1985, should be dissolved.

An appropriate Order shall issue.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is accordingly

ORDERED:

(1) that Judgment be, and it hereby is, ENTERED in favor of the defendants, and plaintiff's Complaint is DISMISSED with prejudice;

(2) that the Preliminary Injunction issued by this court on June 26, 1985, be, and the same hereby is, DISSOLVED;

(3) that the Clerk shall forward certified copies of this Order together with the accompanying Memorandum Opinion to all counsel of record.