**SPECIALIZED CARRIERS & RIGGING ASSOC., Appellant,**

v.

**COMMONWEALTH OF VIRGINIA; Harold C. King; R.L. Suthard, Appellees.**

No. 85–2059.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1986.

Decided July 3, 1986.

Robert B. Walker (Joseph L. Steinfeld, Jr., John R. Sims, Jr., Sims, Walker & Steinfeld, P.C., on brief), for appellant.

John M. McCarthy, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Walter A. McFarlane, Deputy Atty. Gen., Nancyellen Keane, Asst. Atty. Gen., Walter H. Ohar, Special Counsel, on brief), for appellees.

Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

In this action, the plaintiff, Specialized Carriers & Rigging Association (SC & RA), a non-profit incorporated association composed of haulers of heavy and oversized machinery, equipment, building materials and supplies, challenges under both the Supremacy [1] and the Commerce Clauses [2] the constitutionality of a 1985 amendment of Section 46.1–267 of the Code of Virginia, which broadened the scope of that section to require amber flashing lights, visible for at least 500 feet, on any motor vehicle engaged in "either escorting, or towing overdimensional materials, equipment, [and] boats...." [3] It was the plaintiff's contention that the Section, as amended, violated the Supremacy Clause by imposing a restraint upon interstate commerce in an area which had been preempted by federal law and regulations and by imposing an unreasonable burden on interstate commerce, in violation of the Commerce Clause.

The plaintiff sought and was granted a Temporary Injunction but, after a full hearing, during which the parties submitted their respective evidence, that injunction was vacated, the statute challenged was found constitutional, and the motion of the defendants for summary judgment was granted in favor of the defendants, who are the officials charged with enforcement of the Section. In so ruling, the District Court held that the challenged Section was not barred by principles of preemption under the Supremacy Clause and that it represented a valid exercise by the State of its police powers and constituted no infringe-ment of the Commerce Clause. It is that decision which the plaintiff has appealed. 619 F.Supp. 1199.

We affirm the District Court's grant of judgment in favor of the defendants.

The statute which is the subject of this action is that part of the State's general statutory legislation regulating safety in the use of the State highways which regulates particularly and specially the transportation of overdimensional freight. The transportation of such freight over the State highways is restricted in the interest of safety by the statute under review "to daylight hours and clement weather" and, central to this controversy, the motor vehicle transporting such loads must be equipped with "high intensity amber flashing lights, visible for at least 500', as prescribed by the Superintendent [of Transportation]." [4] The statute was enacted some years before the commencement of this action. As originally enacted, the statute applied only to overdimensional loads represented by "manufactured housing units." Va.Code § 46.1–267.1 (1980). So long as the statute related just to "manufactured housing units," there was no challenge to its validity. In 1985, however, the statute was amended to include within its requirements motor vehicles transporting overdimensional loads of "materials, equipment, [and] boats." It was at that point that this action was begun by transporters of "heavy and oversized machinery, equipment, building materials and supplies." The plaintiff's objection to the statute goes only to its extension to freight transported by members of its association and it does not expressly quarrel with the application of the statute to "manufactured housing

---

1. U.S. Const. art. VI, cl. 2.

2. U.S. Const. art. I, § 8, cl. 3.

3. Under Virginia law "overdimensional" freight being transported by motor vehicle over interstate highways is defined as materials having a width greater than 102 inches. Va.Code §§ 46.-1–328–330 (Supp.1985). The term "overdimensional" has been used by all parties to this suit and the term in the opinion conforms to this definition.

4. The applicable statutory provision is Section 46.1–267, Virginia Code (Supp.1985), and the Virginia Hauling Permit Regulations for Transporting Overdimensional/Overweight Load/Vehicles. The summarization of these regulations follows the language of plaintiff's summarization of the statute and regulations as set forth in plaintiff's brief in this Court at page 8, note 3.

units" unless it be considered that the term "housing units" falls within the descriptive term "building materials." In fact, the plaintiff's complaint is directed not at the original statute but only at its 1985 amendment.

The plaintiff posed both in its complaint and at the hearing on its motion for a permanent injunction, two Constitutional objections to the 1985 amendment. It contends first that any authority of the State to prescribe "amber flashing lights" on either the towing vehicle or the load moving on an interstate highway was preempted by what the plaintiff would declare to be the clearly indicated "desire [of the federal government] to regulate *all* exterior lamps used by *all* motor carriers" as stated in 49 C.F.R. § 393, Subpart B (italics in plaintiff's language). Its second charge of unconstitutionality against the statute as amended was that it imposed an unreasonable burden on interstate commerce in violation of Article I, Section 8, Clause 3 of the Constitution. We consider first the plaintiff's preemptive claim.

■ In the recent cases of *Hillsborough County v. Automated Medical Laboratories,* 471 U.S. ——, ——, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985) and *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Supreme Court, after reviewing the decisions on preemption, extracted therefrom the principles for determining when federal law, either as expressed in a statute or a regulation validly issued thereunder, will preempt or supersede state law or regulation. The principles governing the circumstances under which preemption may arise, as declared in these cases, may be summarized as follows: first, when acting within constitutional limits, Congress has expressly stated an intention to preempt there is preemption; second, though it has not expressly preempted a field or an identifiable portion thereof, preemption exists if Congress has adopted a "scheme of federal regulation ... sufficiently comprehensive to make reasonable

the inference that Congress left no room ... for supplementary state regulation;" and finally, "where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,'" or "when 'compliance with both federal and state regulation is a physical impossibility,'" there will be preemption. *Hillsborough County* 471 U.S. at ——, 105 S.Ct. at 2375, 85 L.Ed.2d at 721. In applying these principles, though, it is important to bear in mind that "where the state's police power is involved, preemption will not be presumed." *Chrysler Corp. v. Rhodes,* 416 F.2d 319, 324, n. 8 (1st Cir. 1969). In short, absent express preemption by Congress, the resolution of the issue of preemption basically turns on whether Congress in its legislation "intended [thereby] to occupy [completely] the field" or whether it is impossible to comply with both state and federal law. *Tousley v. North American Van Lines, Inc.,* 752 F.2d 96, 101 (4th Cir.1985) (citing and relying on *Silkwood v. Kerr-McGee Corp., supra,* p. 5).

■ We do not understand the plaintiff to argue that the amendment in controversy here is precluded by any express language of preemption in the Motor Carrier Safety Act.[5] Neither does it appear that the plaintiff contends that in such Act Congress laid out so comprehensive a scheme of federal safety regulations for motor carriers that there was left "no room ... for supplementary state regulation." Nor could it convincingly press such construction of the Act. In fact, Congress made clear in various sections of the Motor Safety Act that no such comprehensive preemption was contemplated or intended. In Section 206(c)(2) of the Act, as amended in 1984, 49 U.S.C., which authorizes the promulgation of federal safety regulations for motor vehicles, for instance, the Secretary was directed, before issuing any regulations, to "consider ... (B) State laws and regulations pertaining to commercial motor vehicle safety in order to minimize unneces-

5. 49 U.S.C. § 2501 *et seq.*

sary preemption of such State laws and regulations under this Act." Congress also provided in Sections 2506 and 2507, 49 U.S.C., a method under which State laws and regulations could be reviewed, under a rule-making procedure, for compatibility with the federal Act. It further in Section 2302, 49 U.S.C., authorized financial grants to the States for "the development or implementation of programs for the enforcement of Federal rules, regulations, standards and orders applicable to commercial motor vehicle safety and compatible State rules, regulations, standards, and orders." Unquestionably, these Sections demonstrate, not only that Congress did not intend to occupy completely the field of safety regulations for the operation on interstate highways of commercial vehicles but also that it contemplated the continued application and enforcement of State rules or regulations which might not be inconsistent or "incompatible" with federal regulations. In effect, Congress intended an accommodation with state regulation so long as that could be achieved without violating federal law or valid federal regulation.

Moreover, this Congressional intent not to preempt the entire field of interstate highway safety was recognized by the Regulations issued under the Motor Safety Act. Thus, in Section 390.30, 49 C.F.R., it is provided:

> Except as otherwise specifically indicated, Parts 390–397 of this subchapter are not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto.

More particularly with reference to additional equipment or accessories (terms which could reasonably include additional lighting) Section 393.2, 49 C.F.R. states:

> Nothing contained in Parts 390 through 397 of this subchapter shall be construed to prohibit the use of additional equipment and accessories, not inconsistent with or prohibited by Parts 390 through 397 of this subchapter, provided such equipment and accessories do not decrease the safety of operation of the motor vehicles on which they are used.

■ This review of federal legislation and regulations demonstrates that, so far as practical, preemption under the Act was generally to be avoided or at least minimized, if possible. It is the plaintiff's position, however, that, even though there may not have been a Congressional intention to preclude completely State safety regulation governing interstate highways, there was evidence of such intention in the unique area of the lighting of motor vehicles using interstate highways, whether of standard 102 inches width or of overdimensional width. It finds this intention in the language of Section 393.25(f), which provides that "[a]ll exterior lighting devices shall be of the steady-burning type...." It asserts—and this is its real argument on preemption—that this Regulation is of general application to the operation of motor vehicles on interstate highways at all hours and under all circumstances and that, in particular, it permits no distinction between overdimensional loads and those conforming to the standard width of 102 inches. It concludes on the basis of these assumptions that there is "no way that SC & RA's membership can comply with both the Federal Motor Carrier Safety Regulation requiring that all exterior lights be steady burning, and the new Virginia law requiring that they use an amber flashing light."[6] It apparently rests its claim of preemption on the rule as stated in *Silkwood*, where the Supreme court said preemption could be inferred "when it is impossible to comply with both state and federal law." 464 U.S. at 248, 104 S.Ct. at 248.

■ There are two flaws in this argument of the plaintiff. In the first place, Congress has apparently chosen to draw a clear distinction in the application of its requirements between motor vehicles

---

6. Plaintiff's Brief, p. 10.

whose width is 102 inches or less and those whose width is in excess of 102 inches. In this latter classification, which covers the vehicles with overdimensional loads regulated under the challenged statute, Congress has expressly given the States, through the authority to issue use-permits, the authority to regulate these loads of 102 inches or greater. Thus, in 49 U.S.C. § 2316(c), the Congress declared: "Notwithstanding the provisions of this section or any other provision of law, a State may grant special use permits to motor vehicles that exceed 102 inches in width." The right given by this section to control the operation of motor vehicles with loads in excess of 102 inches carried with it normally the authority to condition the terms on which such vehicles may be operated on the State's highways. And the plaintiff has in effect recognized this fact and complied with various regulations issued by the State of Virginia under the authority of this statute in moving overdimensional loads over that State's highways. Thus, in its brief, the plaintiff lists a number of requirements imposed on its members in transporting overdimensional loads over the Virginia highways, the validity of which it does not contest.

The Virginia regulations, for instance, limit the operation of overdimensional loads over its highways to daylight hours and prohibits such operation in inclement weather. The plaintiff concedes the validity of such regulations, even though the Motor Carrier Safety Act includes no such regulations. It also declares in its brief in this Court that it "willingly compl[ies] with" the State regulation that "overdimensional loads ... be equipped with dimension or marker lights, red or orange fluorescent flags, and a warning sign." While the federal Regulations do have a section dealing with projecting loads which apparently refers to loads within the 102 inches in width normally covered by such Regulations, the requirements for projecting loads is different than those for overdimensional loads exceeding 102 inches under the Virginia statutes. Actually, there is only one regulation of the Virginia statute and regulations governing overdimensional loads which the plaintiff would argue is precluded by federal regulations and that is the regulation which requires that "[h]igh intensity amber flashing lights, visible for at least 500' ... shall be mounted on the top of the escort and tow vehicles and on the upper rear end of the overdimensional vehicle or load for maximum visibility, front and rear." Va.Code § 46.1–267 (Supp. 1985). The plaintiff finds no constitutional imperfection in any other safety regulation issued by the State of Virginia relating to the transportation of overdimensional loads exceeding 102 inches in width. Moreover, the plaintiff finds only a single word in Section 46.1–267 to be in its view invalid and that is the requirement that the light on the motor vehicle or truck be "flashing." It contends that Section 393.25(f) of the Federal Regulations requires "steady-burning" lights and that this fact proscribes any requirement for "flashing" lights on any vehicle being operated on an interstate highway. It assumes, under its hypothesis, that both Section 393.25(f) of the Federal Regulations and Section 46.1–267 of the State statute apply equally to all overdimensional loads exceeding 102 inches in width being carried by motor vehicle on interstate highways in Virginia, and that, since one set of such regulations requires "flashing" lights (the State Regulation) and the other "steady-burning" lights (the Federal Regulation), the two Regulations overlap and are incompatible. We do not agree.

In our opinion, Section 393.25(f) was not intended to cover overdimensional loads of a width greater than 102 inches. To do so would be inconsistent with Section 416(c) of the Act itself. Section 2316(c), as we have said, plainly gives the State the authority to regulate such overdimensional loads and that authority includes the warning signs and lights which must be placed on such loads. The plaintiff has in effect recognized this, for it declares, as we have said, that it "willingly" complies with the requirement of the State statute that overdimensional loads "be equipped with dimension or marker lights," thereby accepting

that under Section 2316(c) the State has the right to regulate the lighting for overdimensional loads. But, whether this be true or not, there is another reason to find no federal preemption in this case.

As we have already observed, the Act itself has repeated expressions that federal preemption under the Act is only to be invoked where the State requirement is "incompatible" with the federal requirement or the state requirement "decreases safety" on the highways.[7] In fact, the Congress in the 1984 amendments of the Motor Carriers Safety Act provided a formal administrative procedure for reviewing any state regulation or requirement for compatibility with federal regulation under the Act, with the objective "to minimize unnecessary preemption of such State laws and regulations under this Act." *See* 49 U.S.C. §§ 2505–2507. It is obvious from these provisions that Congress never intended preemption to apply to any State statute or regulation, the implementation of which would be compatible with the implemention of a federal regulation, and the plaintiff seems to recognize this, for it bases its objection to the State requirement on the premise that preclusion is required because "it is impossible to comply with both state and federal law." *Silkwood* at 248, 104 S.Ct. at 621. However, the record conclusively shows that it is not impossible to comply with both regulations, even if it be assumed that Section 393.25(f) of the Regulations applies to overload freight having a width greater than 102 inches.

The error in this "impossible" argument of the plaintiff is its failure to recognize that the State and federal regulations apply to two entirely different situations and may be easily accommodated. It was stipulated at the hearing in District Court that the lights required by the State statute "would be flashing during daylight hours only under Virginia law."[8] As thus conceded, the Virginia statute limits the opera-

tion of the overdimensional vehicles strictly to daylight hours. It follows that flashing lights will only be in use during daylight hours and will not be used on highways in Virginia at any other times under the requirements of Section 46.1–267 of the Virginia Code. On the other hand, the federal regulations which prescribe the use of "steady-burning" lights on motor vehicles traveling on interstate highways (i.e., 49 C.F.R. § 393.25(f)) requires the use of lights only "[d]uring the period of one-half hour after sunset to one-half hour before sunrise." 49 C.F.R. § 392.30(a). Section 393.25(f) would only apply, therefore, after daylight. Thus, the federal and state regulations apply at different times and are not inconsistent. So long as a member of plaintiff's association is operating a motor vehicle with an overdimensional load on a Virginia highway under a Virginia use-permit, he is required to have the flashing light prescribed by the state statute. At that same time he is not required to have any lights while operating under the federal regulation. Thus, there is no basis for a finding of incompatibility or impossibility in the enforcement of the two regulations in connection with the operation of overdimensional motor vehicles under Section 46.-1–267. The state statute is accordingly not preempted because it is incompatible with an equally applicable federal statute or regulation.

Since we find that, in promulgating the federal regulations under the Federal Motor Carrier Safety Act, the Secretary did not intend to foreclose Virginia from issuing state regulations governing the transportation of overdimensional loads of a width in excess of 102 inches over Virginia interstate highways and that the Virginia statute governing lighting to be displayed on vehicles transporting such overdimensional loads is not incompatible with the federal regulations, we affirm the ruling of the district court that the Virginia statute

---

**7.** We do not understand the plaintiff to contend that the state requirement diminishes safety nor can it properly dispute that the district court's finding that the state regulation contributed to

safety is invulnerable to attack as clearly erroneous.

**8.** Appendix, p. 104.

is not invalidated under the principles of preemption.

The plaintiff, in his second argument for invalidity of the State statute, finds that the claim of the State that the enforcement of the statute will promote highway safety is "illusory" and that the burden imposed on interstate commerce by its operation is not "justified by a proportionate increase in safety." For this reason, it declares the statute is violative of the Commerce Clause.

■ We do not take it that the plaintiff disputes the proposition that "a State has a legitimate interest in regulating motor vehicles using its roads in order to promote highway safety." *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 442, 98 S.Ct. 787, 794, 54 L.Ed.2d 664 (1978). Nor would it contest the proposition that a statute designed to effect such purposes carries a "strong presumption of validity," *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959), and that "[i]n no field has this deference to state regulation been greater than [in] that of highway safety regulation." *Raymond* 434 U.S. at 443, 98 S.Ct. at 795. Because of this greater deference, courts are said to have been generally "reluctant to invalidate," statutes intended to promote highway safety. *Raymond* at 443, 98 S.Ct. at 795. In fact, so strong is this deference to state regulation in matters of highway safety that "if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Raymond* at 449, 98 S.Ct. at 798. (Blackmun, J., concurring).

■ Applying these principles to the facts of this case, we find no basis for invalidating the challenged statute. In this case, the district judge found that "[t]he safety interests of the state [in enacting the challenged statute] far outweigh the slight burden on interstate commerce" resulting from the enforcement of the statute. He also emphasized that the application of the statute does not discriminate in favor of local operators of motor vehicles. Those findings are reversible only for clear error. This case is thus unlike the two most recent Supreme Court decisions in this area, in which there was a finding at the trial level that there was no real safety interest involved in the operation of the statute in issue and that the statute in question discriminated in favor of local residents and businesses. *Raymond;* and *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981). It was actually this last consideration which prompted the Supreme Court's decision. *See Kassel* at 687–87, 101 S.Ct. at 1330 (Brennan, J., concurring).

This statute, thus found to be justified by safety considerations by the district judge, and not prompted by any "parochial" interests, was the result of careful inquiry stretching over a period of years by the State legislature into the problem addressed in the statute. This legislative concern with the road hazards caused by travel of overdimensional motor vehicles over the State's roads began in 1976 and continued as a matter of legislative inquiry and analysis until the enactment of the 1985 amendments. In the course of the investigation, the State General Assembly employed an expert to research the need for safety regulations dealing with overdimensional loads on the public highways and to make recommendations for legislation in the area. This expert had recommended the requirement of "amber flashing lights" on the vehicles carrying overdimensional loads. He testified that he found that 38 states required the use of flashing lights for overdimensional loads. Not only did the General Assembly utilize the services of a traffic safety expert in researching the problem of overdimensional loads on the highways but it, through its designated committees, held, after public notice, public hearings on the legislation later enacted for these overdimensional loads. At these public hearings, no objections were made to the legislation. Certainly, the legislature of Virginia developed a credible factual ba-

sis for its enactment of the challenged statute as a safety measure and for the district court's finding of a valid safety purpose motivating the enactment of Section 46.1–267.

The plaintiff would fault much of the record on which the Virginia General Assembly acted because, as it states, that record was directed at the movement of overdimensional housing units over the highway. In amplifying this argument, the plaintiff sought to distinguish the hazards involved in transporting housing units and heavy industrial loads. The expert for the State defendants had conceded in his report to the General Assembly that the trucks carrying heavy industrial loads generally traveled at a slower speed than tractor-trucks transporting lighter housing units but he testified at the hearing that, on the basis of his research and experience he perceived no real difference in safety hazards between the two types of freight. Likely the earlier preoccupation of the legislature with housing transportation was because of the greater frequency of housing unit transportation over transportation of over-size machinery, etc. In any event, we are unable on the record in this case to find any appreciable difference in the road hazards arising out of the use of the two over-size types of freight.

■ It would appear difficult, if not impossible, to conclude that overdimensional loads did not, as the plaintiff would have us conclude, present special hazards on the highways and did not present a proper subject for special safety regulations in the face of the fact that most of the states have some form of regulation of such loads in order to promote safety on the highways. The plaintiff offered as a witness the employee of presumably a trucking corporation operating in practically all the states. His assignment with the corporation was as the officer "in charge of routing the overdimensional loads throughout the 48 states." He testified that practically every state had some form of regulation of overdimensional loads over the highways. According to him these regulations were not uniform but varied in scope and application among the various States. So far as he knew only Maryland actually banned "flashing lights." On the other hand, he testified West Virginia required in particular "flashing lights" on at least some of its highways. He referred in his testimony to the unusual requirements for lighting in connection with overdimensional loads in California, Texas, and Tennessee. This witness also testified to the problems that arise and the changes which must be made when an overdimensional load passes from one state to another as the result of the lack of uniformity in the regulations of the various states. Manifestly, such lack of uniformity is not, though, a ground for invalidating a safety statute in the area of highway safety. This was made plain in *Bibb* 359 U.S. at 524, 79 S.Ct. at 965:

If there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective. Policy decisions are for the state legislature, absent federal entry into the field.

Further, the Congress did not feel that uniformity was required in the regulation of traffic by vehicles with overdimensional loads on the public highways. Had it considered uniformity was required, it would not have given to the states in § 2316(c) the authority to regulate this traffic through the requirement of individual state use-permits, an authorization that invited diversity in State regulations.

The only burdens which this statute imposes on the trucker of an overdimensional load are the expense of attaching the "amber flashing light" and the inconvenience of compliance with state lighting requirements as the vehicle travels from one state to another. The plaintiff claims that an "amber flashing light," installed, will cost $220. One of the plaintiff's witnesses testified to requirements imposed on overdimensional loads that may involve comparable costs. The district judge did not find this expense so significant, measured against what is the patent hazard created by the overdimensional load on the high-

ways, as to support the invalidation of the statute. We agree with this conclusion. So far as any inconvenience arising out of differences in state regulations is concerned, this is an inevitable consequence of the lack of uniformity in state regulations, a lack of uniformity which Congress has expressly authorized. As we have said, had Congress wanted the requirements of all states to be identical in the regulation of overdimensional loads traveling on interstate highways, it could easily have so provided; it did not so provide and the plaintiff may not secure an invalidation of a state statute on the ground of non-conformity where Congress has not ordered preemption but rather has granted to the states the power to differ.

We accordingly find no basis for disturbing the findings of fact or conclusions of law of the district judge herein and, therefore, affirm his dismissal of the action herein.

AFFIRMED.