MURDOCK, Justice.
Lisa Dixon, administratrix of the estate of Maurine Humphreys, appeals from a judgment entered on a jury verdict in favor of Hot Shot Express, Inc. (“Hot Shot”), and its employee, John Jenkins, in Dixon’s wrongful-death action. We affirm.

I. Facts and Procedural History

Hot Shot is an interstate motor-carrier company based in Pennsylvania. Jenkins, a resident of Georgia, is an owner-operator of a tractor-trailer who “leased” his truck and trailer, as well as his own services in operating the truck and trailer, to Hot Shot under a long-term lease that effectively made Hot Shot his employer. In October 2002, Jenkins began a cross-country hauling trip for Hot Shot. Humphreys, *1084 a woman in her 70s who had been Mends with Jenkins for several years, decided to accompany Jenkins on the trip. The journey took them from Georgia through numerous states before passing through Alabama on their way back to Georgia.
On November 2, 2002, Jenkins exited a limited access portion of U.S. Highway 78 in Winfield, Alabama, and discovered that two tires on his trailer had blown out. Jenkins decided to leave the trailer in Win-field for service and to continue the journey back to Georgia with Humphreys in his tractor without the trailer. Jenkins and Humphreys continued traveling east on U.S. Highway 78 through Walker County. Testimony at trial indicated that a heavy rain fell as Jenkins proceeded on the highway.[1] As Jenkins entered Carbon Hill, the speed limit decreased, and Jenkins testified that he applied his brakes to slow down as he approached a curve in the road. When he did so, the truck hydroplaned, crossing the center lane into a lane of oncoming traffic. The truck was struck on the right passenger side by an oncoming tractor-trailer. Humphreys was killed in the collision.
In March 2003, Dixon, as administratrix of Humphreys’s estate, filed a wrongful-death action against Hot Shot and Jenkins in the Walker Circuit Court. Thereafter, Dixon filed a motion for a partial summary judgment, contending that the Federal Motor Carrier Safety Regulations, specifically 49 C.F.R. § 392.14, enacted pursuant to the Federal Motor Carrier Safety Act, 49 U.S.C. § 13902 et seq., preempt Alabama’s guest statute, § 32-1-2, Ala.Code 1975,[2] concerning the duty Jenkins owed to Humphreys. In response, Hot Shot and Jenkins filed their own motion for a summary judgment contending that Alabama’s guest statute applied and was not preempted by federal regulations and, among other things, seeking a judgment in their favor as to Dixon’s negligence claim. The trial court denied Dixon’s motion and granted Hot Shot and Jenkins’s motion, concluding that there was “no support for the proposition that the Federal Motor Carrier Safety Regulations preempt the Alabama Guest Passenger Statute.” It also determined that Humphreys was a guest of Jenkins’s and that, as a result, the guest statute applied in this action.
The action was tried before a jury. At the close of the evidence, Dixon requested that the jury be charged as to the content of 49 C.F.R. § 392.14, which provides, in pertinent part:
“Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated.”
Dixon also requested that the jury be charged as follows: “Under Alabama law, *1085 no person may operate a commercial motor vehicle in this state in violation of the Federal Motor Carrier Safety Regulations as prescribed by the U.S. Department of Transportation.” Dixon requested this charge pursuant to § 32-9A-2(a)(l), Ala. Code 1975, which provides, in pertinent part:
“[N]o person may operate a commercial motor vehicle in this state, or fail to maintain required records or reports, in violation of the federal motor carrier safety regulations as prescribed by the U.S. Department of Transportation, 49 C.F.R. Part 107, Parts 171-180, Parts 382-384, and Parts 390-399 and as they may be amended in the future. Except as otherwise provided herein, this chapter shall not be construed to repeal or supersede other laws relating to the operation of motor vehicles.”
The trial court denied both requested charges, providing the following explanation on the. record:
“THE COURT: ... I don’t see anywhere in the Pattern Jury charges, and I had just worn out both volumes of them last night, that mentions the — I don’t find anything that mentions the— Pattern Jury charges, a single thing that mentions the Federal Motor Carrier Vehicle Safety Regulations, period. There is nothing there. Now, I will say this: It’s not left out because of that because Alabama has chosen to ignore anything the federal government does because .... there are instances in our Pattern Jury Instructions where they talk extensively about standards that are set by federal acts.... [This] [Heads me to believe that the Supreme Court doesn’t want me charging on those [federal regulations].
[[Image here]]
“MR. SHIGLEY [Dixon’s counsel]: I would suggest that it’s an oversight. You do have a code section that in Alabama says it’s unlawful for them to operate on the road in violation of the Federal Motor Carrier Safety Regulations.
“THE COURT: I understand that, and to me that’s further proof that the Supreme Court, who has approved these Pattern Jury Instructions and given them to us dumb old judges, trial court judges, to properly charge the juries with, they don’t want us bothered with it.
“I think that brings us back to the arguments that [Hot Shot and Jenkins] were making earlier on in the case, which is simply the fact that a person does not comply with the Federal Motor Carrier Safety Standards Act, the fact that they failed to comply with it, is not a — is not negligence or is not wantonness. But the conduct that the person does that may also be a violation of the Federal Regs, could rise to the level of being negligence or wantonness.
“So, take all of that, couple it with the fact that there is no mention of the Federal Motor Carrier Safety Regulations leads me to believe that I’m simply supposed to charge in this case as I would in any automobile accident, and that’s where I see it, and so that then puts me to making a fairly standard charge on the Guest Statute, willfulness and wantonness, leave out all sorts of contribfutory negligence], just like we got two folks riding down the road in a car.”
The trial court charged the jury according to Alabama’s guest statute as follows:
“Now, let’s talk about the issues that are involved in this case. Early on in this case it was determined that on the occasion of this motor vehicle collision Maurine Humphreys was a guest in the motor vehicle driven by John Jenkins. *1086 That determination brings up the following: The driver of a motor vehicle upon a public highway owes to a guest in the driver’s vehicle the duty not to willfully or wantonly injure the guest. Such a driver is not liable for negligently inflicting injury upon the guest.
“Now, I’m now going to read you a Code Section out of the Alabama Code. This is Code of Alabama, 1975, Section 32-5A-170. ‘No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching or going around a curve when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.’
“Negligence is the failure to discharge or perform a legal duty owed to the other party. Negligence means the failure to exercise reasonable ordinary care; that is, such care as a reasonably prudent person would have exercised under the same or similar circumstances. Therefore, negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something which a reasonably prudent person would not have done under the same or similar circumstances.
“Wantonness is the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty an injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he either consciously and intentionally did some wrongful act or consciously omitted some known duty which pi'oduced the injury.
[[Image here]]
“Willfulness means intentionally, knowingly, and purposefully. Therefore, willfulness is the conscious doing of some act or omission of some duty under knowledge of existing conditions coupled with a design or purpose to inflict injury.
“The plaintiff claims the defendant, John Jenkins, willfully or wantonly operated a motor vehicle he was driving at the time of the collision that is the subject of this lawsuit, and that his willfulness or wantonness proximately caused the death of Maurine Humphreys. The defendant in answer to the plaintiffs complaint denies that he was willful or wanton and denies that he brought about the death of Maurine Humphreys.
“This presents for your determination the following: Was the defendant, John Jenkins, guilty of willfulness or wantonness as claimed by the plaintiff? If so, was such willfulness or wantonness of John Jenkins the proximate cause of the death of Maurine Humphreys as claimed?”
Following the charge, Dixon again objected to the trial court’s failure to instruct the jury regarding the Federal Motor Carrier Safety Regulations. After initial deliberations, the jury asked a question about the distinction between willfulness and wantonness, and the trial court further instructed the jury in pertinent part as follows:
“Now, our Guest Statute — we follow under the Guest Statute in this case, and the — here is the obligation of a driver of a motor vehicle to someone who is a *1087 guest in the vehicle with him. Now, the guest is someone who is not paying to ride, who is someone that’s just been invited to go along. The driver of a motor vehicle upon a public highway owes a guest in the driver’s vehicle a duty not to willfully or wantonly injure the guest. That’s two levels of culpability. I will explain them to you in a minute.
“The next sentence of that rule says this: Such a driver is not liable for negligently inflicting injury upon a guest....
[[Image here]]
“Negligence is the failure to discharge or perform a legal duty owed to the other party. I’ll go into a little bit more detail on that. Negligence means the failure to exercise reasonable ordinary care; that is, such care as a reasonably prudent person would have exercised under the same or similar circumstances. Therefore, negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something which a reasonably prudent person would not have done under the same or similar circumstances....
[[Image here]]
“... The next — all right. So under the Guest Statute if a person is guilty of negligence, then the plaintiff cannot recover.
“The next level of culpability is wantonness. Now, again, looking at the Guest Statute, the plaintiff can only recover if the defendant is guilty of wanton conduct or willful conduct, doesn’t have to be both. In fact, they’re not the same. And let me explain that to you again.
“I am going to give a charge that I did not give initially. It’s [Alabama Pattern Jury Instruction] 29.01. Willfulness and wantonness distinguished. Now, wantonness is the conscious doing of some act or the omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such injury — I’m sorry, or omission of such duty, injury will likely or probably result. Let me read that to you again. Wantonness is the conscious doing of some act or the omission of some duty under the knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result.
“Willfulness is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied by a design or purpose of inflicting injury.”
Following further deliberations, the jury returned a verdict in favor of Hot Shot and Jenkins. Dixon appeals, contending that the trial court erroneously instructed the jury concerning the duty Jenkins owed Humphreys.

II. Standard of Review

“ ‘ “ ‘[A]n incorrect or misleading charge may be the basis for the granting of a new trial.’ ” ’ George H. Lanier Mem’l Hosp. v. Andrews, 809 So.2d 802, 806 (Ala.2001) (quoting King v. W.A. Brown & Sons, Inc., 585 So.2d 10, 12 (Ala.1991) (citation omitted)). ‘When an objection to a jury charge has been properly preserved for review on appeal, ... we “ ‘look to the entirety of the [jury] charge to see if there was reversible error,’ ” and reversal is warranted only if the error is prejudicial.’ George H. Lanier Mem’l Hosp., 809 So.2d at 807 (quoting King, 585 So.2d at 12).”
Baldwin County Elec. Membership Corp. v. City of Fairhope, 999 So.2d 448, 459 (Ala.2008).

*1088
III. Analysis

Dixon contends that the trial court erred in failing to properly instruct the jury by not incorporating the prescriptions of 49 C.F.R. § 392.14 into its charges. She further contends that the trial court should not have instructed the jury as to wantonness and/or willfulness under Alabama’s guest statute, § 32-1-2, Ala.Code 1975, because, she argues, the Federal Motor Carrier Safety Regulations preempt state law concerning the types of breaches of the standard of care for which a party may be held liable. Dixon argues that these errors in instructing the jury were prejudicial to her case because of the stark difference between the “extreme caution” standard in 49 C.F.R. § 392.14 and the wanton and/or willful standard in § 32-1-2, Ala. Code 1975.
We cannot agree that the trial court erred by refusing to instruct the jury on the prescriptions of 49 C.F.R. § 392.14, rather than on Alabama’s common-law concepts of willfulness and wantonness. Hot Shot and Jenkins’s brief makes the correct response to Dixon’s position. As they first explain, there is a presumption against preemption:
“The appellant contends that Alabama’s Guest Passenger Statute is preempted by 49 C.F.R. § 392.14. Any preemption analysis begins first with the presumption against preemption. The United States Supreme Court has clearly mandated that ‘preemption of state law by Federal statute or regulation is not favored “in the absence of pervasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained.” ’ Commonwealth Edison Co. v. Montana, 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981) (quoting Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981)). There is a presumption ‘that Congress did not intend to displace state law.’ Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). Indeed, courts are instructed to ‘start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.’ City of Burbank v. Lockheed Air Terminal, 411 U.S. 624, 643, 93 S.Ct. 1854 (1973) (quoting, Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).”
Hot Shot and Jenkins’s brief, at 11-12 (emphasis added).
As the United States Court of Appeals for the Fourth Circuit has explained:
“The principles governing the circumstances under which preemption may arise ... may be summarized as follows: first, when acting within constitutional limits, Congress has expressly stated an intention to preempt there is preemption; second, though it has not expressly preempted a field or an identifiable portion thereof, preemption exists if Congress has adopted a ‘scheme of federal regulation ... sufficiently comprehensive to make reasonable the inference that Congress left no room ... for supplementary state regulation;’ and finally, ‘where the field is one in which “the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,”’ or ‘when “compliance with both federal and state regulation is a physical impossibility,” ’ there will be preemption. [Hillsborough County v. Automated Medical Laboratories, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985) ]. In applying *1089 these principles, though, it is important to bear in mind that ‘where the state’s police power is involved, preemption will not be presumed.’ Chrysler Corp. v. Rhodes, 416 F.2d 319, 324, n. 8 (1st Cir.1969).”
Specialized Carriers & Rigging Ass’n v. Virginia, 795 F.2d 1152, 1155 (4th Cir.l986)(emphasis added). See also Wyeth v. Levine, — U.S.-,-, 129 S.Ct. 1187, 1194-95, 173 L.Ed.2d 51 (2009) (“ ‘[I]n all pre-emption cases, and particularly in those in which Congress has “legislated ... in a field which the States have traditionally occupied,” ... we “start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.” ’ ”).
Hot Shot and Jenkins begin their analysis by explaining that Dixon has not argued that 49 C.F.R. § 392.14 expressly preempts state law. Hot Shot and Jenkins then contend, correctly, why one cannot conclude that Congress intended “to occupy completely the field of safety regulations” for the operation of commercial vehicles:
“Dixon has not argued that 49 C.F.R. § 392.14 expressly preempts state law. Nor would this position find any support. While the regulation in question was authorized by the Motor Carrier Safety Act, 49 U.S.C. § 2501 et seq., Congress made clear that the Act did not intend to completely preempt supplementary state regulation. In Section 206(c)(2) of the Act, which authorizes the promulgation of federal safety regulations for motor vehicles, for instance, the Secretary was directed, before issuing any regulations, to ‘consider ... (B) State laws and regulations pertaining to commercial motor vehicle safety in order to minimize unnecessary preemption of such State laws and regulations under this Act.’ Congress also provided in Sections 2506 and 2507, 49 U.S.C., a method under which State laws and regulations could be reviewed, under a rule-making procedure, for compatibility with the federal Act. It further in Section 2302, 49 U.S.C., authorized financial grants to the States for ‘the development or implementation of programs for the enforcement of Federal rules, regulations, standards and orders applicable to commercial motor vehicle safety and compatible State rules, regulations, standards, and orders.’ Indeed, the United States Court of Appeals for the Fourth Circuit concluded that ‘[unquestionably, these Sections demonstrate, not only that Congress did not intend to occupy completely the field of safety regulations for the operation on interstate highways of commercial vehicles but also that it contemplated the continued application and enforcement of State rules or regulations which might not be inconsistent or “incompatible” with federal regulations.’ Specialized Carriers & Rigging [Ass’n] v. Commonwealth of Virginia, 795 F.2d 1152, 1156 (4th Cir.1986).”
Hot Shot and Jenkins’s brief, at 12-13 n. 1 (emphasis added).
As for implied preemption, Hot Shot and Jenkins acknowledge that implied preemption can arise where state law and federal law actually conflict, citing Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Hot Shot and Jenkins correctly note that such
“ ‘actual conflict’ arises either where simultaneous compliance with both state and federal law is impossible, Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963), or where state law stands as an obstacle to accomplish *1090 ment of the federal purpose. Silkwood, supra, 464 U.S. at 248, 104 S.Ct. at 621. Furthermore, in order to justify a finding of implied preemption, the actual conflict must be a ‘sharp’ conflict. Boyle v. United Tech. Corp., 487 U.S. 500, 108 S.Ct. 2510, 2515, 101 L.Ed.2d 442 (1988).”
Hot Shot and Jenkins’s brief, at 12-13. Hot Shot and Jenkins then proceed to explain that the Federal Motor Carrier Safety Act and 49 C.F.R. § 392.14 do not conflict with Alabama law:
“While violations of the Federal Motor Carrier Safety Regulations can lead to the revocation of a carrier’s operating authority, can place a driver out of service, or can lead to the suspension of a driver’s commercial driver’s license (see, e.g., § 32-9A-4, Ala.Code 1975), the regulations give no indication that Congress intended to preempt any of the traditional functions of state law with respect to tori liability. Nor is any conflict apparent between Section 392. II and the Alabama Guest Passenger Statute.”
Hot Shot and Jenkins’s brief, at 15-16 (emphasis added).
Hot Shot and Jenkins’s argument is well taken. Failing to fulfill a federal regulatory responsibility does not equate to tort liability under state law. The federal regulation at issue speaks to the responsibility the operator of a commercial motor vehicle owes to everyone while the operator is driving in “hazardous conditions.” It does not purport to create a cause of action for the failure to exercise “extreme caution” in “hazardous conditions,” and Dixon has directed us to no provision of the federal regulations governing Jenkins’s conduct that mandates such a conclusion. As such, the federal regulation at issue does not conflict with Alabama tort law.
As noted, the overarching concern in any preemption analysis, as in any statutory interpretation, is legislative intent. We note the above-described field of operation for the regulation in question, the fact that neither the Federal Motor Carrier Safety Act nor the federal regulation makes any mention of replacing state tort-law standards for liability to third parties with federal standards, and the fact that the Motor Carrier Safety Act, instead, expressly provides that any regulations adopted in furtherance of the Act should be limited so as “to minimize unnecessary preemption” of state law pertaining to commercial-motor-vehicle safety. We cannot conclude that the Federal Motor Carrier Safety Act reflects the requisite “clear and manifest purpose of Congress” to preempt the “historic police powers of the states” in establishing standards for tort liability among their citizens. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).
In addition, Dixon has failed to demonstrate how the application of Alabama’s guest statute, which is based on a legitimate state interest and which simply limits the cause of action of passengers in motor vehicles, would be inconsistent with or incompatible with § 392.14. There is nothing in the federal regulatory scheme that suggests a preemption of that portion of state law providing for various defenses and exceptions to liability. Of more specific relevance to this case, there is no basis in the Federal Motor Carrier Safety Act or the federal regulation to conclude that Congress intended to eliminate state tort-law limitations on the liability of commercial truck drivers to persons who are guests in their vehicles.

IV. Conclusion

Absent federal preemption, we see no significant question as to whether the trial *1091 court properly charged the jury. The trial court’s charge relating to Alabama’s guest statute and the definitions of wantonness and willfulness were all in accordance with Alabama law. We therefore affirm the trial court’s judgment.
AFFIRMED.
WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
LYONS, J., concurs specially.
COBB, C.J., dissents.

. Two witnesses testified that the heavy rain had ended shortly before the accident, although Jenkins testified that it was still raining at the time of the accident.

. Section 32-1-2, Ala.Code 1975, provides:
"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.”